IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

| | |
|---|---|
| DORETHA BRINKLEY, | * |
| | * |
| Plaintiff, | * |
| vs. | *   No. 2:11-cv-00207-SWW |
| | * |
| | * |
| CITY OF HELENA-WEST HELENA, | * |
| ARKANSAS and ARNELL WILLIS or | * |
| JAMES VALLEY, Individually and in | * |
| their Official Capacity as MAYOR and | * |
| as Former MAYOR OF HELENA- | * |
| WEST HELENA, MIKE HALL, in his | * |
| Individual and Official Capacity as a | * |
| police officer for the CITY OF | * |
| HELENA-WEST HELENA, | * |
| ARKANSAS, | * |
| | * |
| Defendants. | * |

OPINION AND ORDER

Doretha Brinkley brings this action against the City of Helena-West Helena, Arkansas (the City), Arnell Willis, Mayor of the City, James Valley, former Mayor of the City, and Mikel Hall, former police officer for the City, for injuries she claims she suffered while being arrested by Hall on November 16, 2008.[1] Brinkley claims that while she was handcuffed and compliant, Hall slammed her head into his police cruiser and struck her with his baton and fists, knocking out some of her teeth and causing her other

---

[1] The caption of Brinkley's complaint refers to her first name as "Doretha." The body of Brinkley's complaint, however, refers to her first name at various times as "Dorletha," "Dorothea," and "Dorleth." The Court notes also that although Hall was sued as "Mike Hall" and he answered plaintiff's complaint in the name of "Mike Hall," defendants later refer to Hall's first name as "Mikel." Exhibits in the record indicate that Hall's first name is indeed "Mikel."

serious bodily injury.

The matter is before the Court on motion of the City, Mayor Willis and former Mayor Valley, in their individual and official capacities, and Hall, in his official capacity only, for partial summary judgment [doc.#77].[2]  Brinkley has responded in opposition to defendants' motion and defendants have replied to Brinkley's response.  For the reasons that follow, the Court grants defendants' motion for partial summary judgment.

I.

Brinkley asserts claims against Hall for violating her Fourth Amendment rights by using excessive force against her during her arrest.  Compl. ¶¶ 5–8.  She also asserts against Hall "all common law claims resulting from" his intentional actions.  *Id.* ¶ 38.

Brinkley asserts claims against the City for negligent hiring, training, supervision, and retention of Hall.  *Id.* ¶¶ 15-27.  She also claims that Hall's unconstitutional use of force was pursuant to a "policy, custom, ordinance, regulation, decision, edict or act of a policymaker," *id.* ¶ 2, and she asserts "all common law claims against City" resulting from Hall's intentional actions.  *Id.* ¶ 35.

Brinkley claims former Mayor Valley was the final policymaker for the City's police department at the time of the incident and that the "policies, customs, ordinances, regulations, decisions, edicts or acts of the policymaker, under the color of state law, were

---

[2] A suit against an official in his official capacity is the equivalent of a suit against the municipality itself.  *Smith v. Watkins*, 159 F.3d 1137, 1138 n.3 (8th Cir. 1998).  The official is distinct only in his individual capacity.  *Doe v. Washington County*, 150 F.3d 920, 923 (8th Cir. 1998).  Defendants acknowledge that there are genuine issues of material fact with regards to Brinkley's claims against Hall in his individual capacity.

the moving forces in [her] injuries and damages...." *Id.* ¶¶ 2-3. She names current Mayor Willis as a defendant "to the extent Arnell Willis should be the named party as he came into the office of mayor and succeeded to the duties and responsibilities of Valley...." *Id.* ¶ 3.

Brinkley seeks damages for the above claims pursuant to 42 U.S.C. §§ 1983, 1988; the Arkansas Civil Rights Act of 1993 (ACRA), Ark. Code Ann. §§ 16-123-101, 16-123-105; Ark. Code Ann. § 21-9-301; and Ark. Const. Art. 2, § 15.[3]

## II.

Defendants move for partial summary judgment on several grounds, including that the city council, not the mayor, is the final policy maker for the City's police department and that Brinkley has failed to establish the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City's police officers. Defendants argue there are no genuine issues of material fact with respect to these issues and that they are entitled to partial summary judgment as a matter of law.

### A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely

---

[3] Concerning her ACRA claim, Brinkley actually cites Ark. Code Ann. §§ 16-23-101, 16-23-105. As these statutes deal with county law libraries, the Court presumes that Brinkley's citation to these statutes was in error and that she in fact meant to cite to ACRA.

disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted).  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

B.

As a preliminary matter, the Court identifies those arguments that are no longer at issue in this action. In addition to the two arguments set forth above on which defendants move for partial summary judgment, defendants also move for partial summary judgment regarding 1) the existence of an official policy regarding excessive force, 2) deliberately

-4-

indifferent hiring, training, and supervising practices, 3) the impropriety of all claims against current Mayor Willis, 4) the claims of negligence and other state torts against the City, 5) the request for punitive damages against the City, and 6) the impropriety of the individual capacity claim against former Mayor Valley.  Brinkley, however, does not contest these additional arguments that the defendants have set forth in their motion that they state entitles them to partial summary judgment.  Accordingly, Brinkley has waived those arguments.  See *Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument").[4]

C.

1.

The Court now turns to the remaining arguments on which defendants move for partial summary judgment, beginning with defendants' argument that the city council, not the mayor, is the final policymaker for the City's police department.  Determining who was the final policymaker is vital because a municipality will only be liable under § 1983 if the official was "'responsible for establishing final policy with respect to the subject matter in question.'"  *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007)

---

[4] In addition, Brinkley has failed to file a Local Rule 56.1 statement of the material facts as to which she contends genuine issues exist to be tried.  Brinkley has thus admitted the facts set forth by the defendants in their statement of undisputed material facts as to which they contend there are no genuine issues to be tried.  See Local Rule 56.1(c) ("[a]ll material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b)").

(quoting *Penbaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)).  "'Whether an official had final policymaking authority is a question of state law.'"  *Bernini v. City of St. Paul*, 665 F.3d 997, 1008 (8th Cir. 2012) (quoting *Penbaur*, 475 U.S. at 483).

The parties do not dispute that the City is a city of the first class.  See Ark. Code. Ann. § 14-37-103(a)(1) ("All municipal corporations having over two thousand five hundred (2,500) inhabitants shall be deemed cities of the first class.").[5]  There is also no dispute that "[i]n a municipality, the duty of the chief of police and other officers of the police department is under the direction of the mayor."  Ark. Code Ann. § 14-52-203(a).  This grant of authority to the mayor, however, does not necessarily render the mayor the final policymaker for a police department.  See *Greer v. City of Warren*, Civil No. 1:10-cv-01065, 2012 WL 1014658, *13 (W.D. Ark. March 23, 2013) (noting that "[d]espite [Ark. Code Ann. § 14-52-203(a)'s] grant of authority to the mayor, the mayor is still not always considered the final policymaker of the police department under Arkansas law").  Rather, Ark. Code. Ann. § 14-52-101 provides that in cities of the first and second class, "[t]he city council shall have power to establish a city police department, to organize it under the general superintendence of the mayor, and to prescribe its duties and define its powers in such manner as will most effectually preserve the peace of the city, secure the citizens thereof from personal violence, and safeguard their property from fire and

---

[5] Municipal corporations are generally divided into the following classes: (1) cities of the first class; (2) cities of the second class; and (3) incorporated towns.  Ark. Code Ann. § 14-37-102.

unlawful depredations." Thus, while the day-to-day duties of the chief of police and other officers of the police department in a city of the first and second class are "under the direction" and "general superintendence" of the mayor, Ark. Code Ann. §§ 14-52-101, 14-52-203(a), the city council prescribes the police department's duties and defines its powers, *i.e*., makes the police department's policy. Ark. Code Ann. § 14-52-101.

Brinkley, however, argues that former Mayor Valley, not the city council, was the final policymaker for the City's police department when Hall allegedly applied excessive force in arresting her. In support of this argument, Brinkley relies on *S.S. ex rel. A.S. v. Bono Police Dept.*, No. 3:07CV00124-WRW, 2008 WL 4493065 (E.D. Ark. Oct. 1, 2008).

In *Bono Police Dept.*, the court held that "chiefs of police are under the direction of a mayor with regard to policymaking" given that chiefs of police in cities of the first class "'shall execute all process *directed to him by the mayor* ...'" and "'the duty of the chief of police and other officers of the police department shall be *under the direction of the mayor*.'" *Id*. at *3 (quoting Ark. Code Ann. §§ 14-52-202(a), 14-52-203(a) and adding emphasis). Thus, based on its understanding of Ark. Code Ann. §§ 14-52-202(a), 14-52-203(a), the court found that the mayor of the City of Bono (a city of the first class) has the final authority when official police policy is made. *Id*.

Likewise, in *Williams v. City of Alexander, Ark.*, No. 4:12-cv-00187 KGB, 2013 WL 5970686, *10 (E.D. Ark. Nov. 08, 2013), a case not cited by the parties, the court concluded that "a chief of police for a first class city ... is not a final policymaker under

Arkansas law because he is under the direction of a mayor, who has final authority when official policy is made." In so concluding, the court relied on *Bono Police Dept.* and Ark. Code Ann. §§ 14-52-202(a), 14-52-203(a). *Id.*

The Court finds the reasoning of *Bono Police Dept.* and *Williams* regarding who has final authority in a city of the first class when official police policy is made to be unpersuasive. The statutes upon which those courts rely–Ark. Code Ann. §§ 14-52-202(a), 14-52-203(a)–say nothing about any policymaking responsibilities of the mayor concerning a city's police department but only address the powers and duties of police chiefs and police officers. Moreover, neither *Bono Police Dept.* nor *Williams* discuss or acknowledge Ark. Code Ann. § 14-52-101 and its granting to the city council in a city of the first and second class the power to prescribe a police department's duties and define its powers. Thus, any basis upon which *Bono Police Dept.* and *Williams* distinguished or discounted the plain language of Ark. Code Ann. § 14-52-101 is not clear. For these reasons, the Court disagrees with *Bono Police Dept.* and *Williams* that the mayor of a city of the first (or second) class has final authority when official police policy is made and instead determines that the authority to establish police department policy in such a city generally resides with the city council under Ark. Code Ann. § 14-52-101. As Brinkley does not claim that the city council for the City relinquished or delegated its policymaking authority to the mayor of the City (indeed, she admits that the city council adopted the police department's Use of Force Policy), the Court finds that the city council, not former Mayor Valley, had final policymaking authority for the City's police

department.  *Cf. Breedlove v. City of Coal Hill*, Civil No. 08-2018, 2009 WL 160301, *6 (W.D. Ark. Jan. 21, 2009) (finding that in light of Ark. Code Ann. § 14-52-101, it is evident that under Arkansas law, chief of police of City of Coal Hill, a city of the second class, did not have the requisite authority to establish police department policy through his acts; rather, such authority resided with the city council and plaintiffs did not claim that the city council relinquished or delegated its policymaking authority to chief of police); *Graves v. Sullivan*, No. 4:06-cv-1710 SWW (E.D. Ark. May 21, 2008) (this Court found that under Ark. Code Ann. § 14-52-101, the city council of DeValls Bluff, a city of the second class, had the power to "prescribe [a police department's] duties and define its powers" and as plaintiff "[did] not claim that the city council relinquished or delegated its policymaking authority to [police chief]," the police chief lacked authority to set policy in question).

2.

The Court now turns to the question of municipal liability.  A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law."  *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 691 (1978)). "Official policy involves 'a deliberate choice to follow a course of action * * * made from among various alternatives' by an official who [is determined by state law to have] the

final authority to establish governmental policy." *Id*. (quoting *Jane Doe A v. Special Sch. Dist.,* 901 F.2d 642, 645 (8th Cir. 1990)). Alternatively, "custom or usage" is demonstrated by: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation. *Id*. (quoting *Jane Doe A,* 901 F.2d at 646).

      Brinkley does not argue that her constitutional rights were violated by an action pursuant to official municipal policy but rather that her injuries resulted from a regular pattern of unconstitutional misconduct. In her response to defendants' motion for partial summary judgment, Brinkley identifies two incidents in which a police officer for the City allegedly applied excessive force to incapacitated African-American female prisoners. She claims, based on the deposition testimony of Obera Manual, that a police chief "assaulted" a hand-cuffed African-American female in 2006 and that a police officer "body slammed" an African-American female in 2008. Brinkley further notes that Manual stated she "saw other incidents of officers using force against people who were handcuffed or not a threat before November 2008" and that Manual also stated "[i]t was a regular pattern of the City of Helena-West Helena police department to brutalize African American women."

The Court will assume for purposes of today's decision that the two prior incidents identified by Brinkley of African-American female prisoners allegedly being "assaulted" and "body slammed" by police officers constitute unconstitutional misconduct.  However, Manual's claims of seeing other incidents of officers using force against people who were handcuffed or not a threat and that it was a regular pattern of the police department to "brutalize African American women" are much too vague and conclusory to support Brinkley's argument concerning a regular pattern of unconstitutional conduct.  Taken together, Brinkley's reference to two specific incidents and her reference to unspecific incidents involving unnamed police officers simply are not sufficient to establish the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct. *Cf. Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (noting that "two specific prior complaints ... and the various rumors that do not implicate a particular officer pale in comparison to the type of prior complaints" that have been held to constitute a persistent and widespread pattern of misconduct); *Watkins*, 159 F.3d at 1138 (two specific complaints and various rumors about an officer were not sufficient to establish a policy or custom of condoning unconstitutional conduct) (citing *Andrews*, 98 F.3d at 1076)); *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 634 (8th Cir. 2009) (testimony from nurse that she "perceived a variety of shortfalls" in Detention Center's provision of medical care was insufficient to establish the pervasive pattern of constitutional violations required to sustain liability).  Moreover, while Brinkley states that Manual "advised Mayor Valley each time one of these incidents occurred [and filed an FBI report]," that

"Mayor Valley advised that he would look into it after the August 2008 incident," and that "Mayor Valley has a direct say so of what goes on in the police department," Brinkley has introduced no evidence whatsoever that the city council–the final policymaker for the police department–was deliberately indifferent to or tacitly authorized police misconduct after notice of that misconduct. *Cf. Ware*, 150 F.3d at 883 (finding there was sufficient notice that County had notice of sexual misconduct by corrections officers at County Department of Corrections because the director of that facility, a final policymaker, knew of corrections officers' sexual misconduct and failed to adequately discipline those officers).

### III.

For the foregoing reasons, the Court grants the motion of the City of Helena-West Helena, Arkansas, Arnell Willis and James Valley, in their individual and official capacities, and Mikel Hall, in his official capacity, for partial summary judgment [doc.#77]. This action will proceed to trial solely against Mikel Hall in his individual capacity.

IT IS SO ORDERED this 21st day of August 2014.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE